UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMONA R.,[1] <br>     Plaintiff, <br> v. <br> COMMISSIONER OF SOCIAL SECURITY, <br>     Defendant. | Case No. 19-cv-02003-TSH <br><br> **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br> Re: Dkt. Nos. 19, 25 |

## I.    INTRODUCTION

Plaintiff Ramona R. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Commissioner of Social Security that denied Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. ECF Nos. 19 (Pl.'s Mot.), 25 (Def.'s Mot.). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the following reasons.

## II.    BACKGROUND

**A.    Age, Education and Work Experience**

Plaintiff is 55 years old. AR 73. She attended the 12th grade but did not graduate from high school. AR 43. She stopped working in 2013. AR 406. Her date of last insured was March

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

31, 2016. AR 73.

**B.      Medical Evidence**

    **1.      Consultative Psychiatric Evaluation by Dr. Larson**

On February 21, 2015, J. Larson, Psy. D., completed a comprehensive psychiatric evaluation of Plaintiff. AR 405-10. Plaintiff reported medical issues including a recent concussion, broken nose, memory issues, sinus problems, and chronic pain. AR 406. She reported symptoms of depression and grief, including sadness, tearfulness, feeling overwhelmed, having lethargy, and social anxiety. *Id*. She reported that she stayed in her home throughout most of the day as she was embarrassed that someone might see her if she went out. AR 407. Dr. Larson observed that Plaintiff's overall stated mood was depressed. *Id*. Plaintiff denied ever being hospitalized for psychiatric reasons or ever obtaining outpatient psychiatric services. AR 406.

Dr. Larson noted that Plaintiff could identify the president and vice president but could not name or even guess any states bordering California. AR 408. Dr. Larson noted that Plaintiff's concentration was moderately to severely impaired. *Id*. When asked to count by threes, Plaintiff laughed uncomfortably, tried but failed to do so, tried to correct, and then became distressed before Dr. Larson discontinued the exercise. *Id*. Dr. Larson noted that Plaintiff "[d]id not necessarily give up easily, but did become frustrated and overwhelmed" and had "no real recognition or response to failure once she was quite overwhelmed." *Id*.

Dr. Larson concluded that that Plaintiff's remote memory was moderately impaired, and that her fund of knowledge was moderately impaired. *Id*. Dr. Larson opined that Plaintiff's delayed recall was severely impaired as she could not recall any of three objects after a short delay. *Id*. Dr. Larson opined that Plaintiff's immediate recall was moderately impaired. *Id*. Dr. Larson diagnosed Plaintiff with major depressive disorder with recurrent, severe depression. AR 409. Dr. Larson provided a "Functional Assessment/Medical Source Statement" on Plaintiff. Dr. Larson assessed that Plaintiff followed instructions, but that her ability to follow through with certain instructions for more complex tasks required some redirection or assistance. *Id.*. Dr. Larson concluded that Plaintiff's ability to perform simple and repetitive tasks was moderately

2

impaired, and that her ability to perform detailed and complex tasks was moderately to markedly impaired; that Plaintiff's ability to accept instructions from supervisors was unimpaired, but that her ability to interact with coworkers and the public was markedly impaired; that, based on difficulties in the evaluation, she appeared to struggle even with short interactions; that her ability to perform work activities on a consistent basis without special or additional instruction was markedly impaired; that her ability to maintain regular attendance in the workplace was markedly impaired; that her ability to complete a normal workday or workweek without interruptions from a psychiatric condition was moderately impaired; and that her "ability to deal with the usual stressors encountered in the workplace [was] markedly impaired as evidenced by her relatively rapid deterioration and decompensation during the course of this evaluation." AR 409-10. Dr. Larson opined, however, that it was "unclear somewhat about [Plaintiff's] ability to function overall. Again, additional information would assist with this." AR 409-10.

### 2. Critical Care Consultation by Dr. Rothenberg

On April 15, 2015, Peter Rothenberg, M.D., completed a Critical Care Consultation on Plaintiff at Petaluma Valley Hospital, after Plaintiff awakened that morning vomiting blood and was admitted for an upper gastrointestinal bleed. AR 469-71. Plaintiff reported to Dr. Rothenberg that she drank four to five beers daily, but that her last drink was two weeks prior to the consultation. AR 469. Dr. Rothenberg noted Plaintiff had a past medical history of hepatitis C from IV drug use, but did not see any previous admissions for alcohol excess. *Id*. Plaintiff denied use of any regular medications. *Id*. A laboratory report from that date noted that Plaintiff suffered from advanced liver fibrosis. AR 440. Plaintiff was administered Protonix, a proton pump inhibitor (antacid)[2], and a single dose of octreotide. AR 471.

On June 21, 2015, Plaintiff was again evaluated at Petaluma Valley Hospital after feeling very weak and arriving to the emergency room. AR 530. The evaluation noted that Plaintiff was hospitalized on April 15, 2015 due to upper gastrointestinal bleeding secondary to acute alcoholic gastritis. AR 530. It noted that after the April 15, 2015 admission, Plaintiff was advised to pursue

---

[2] *See* https://www.health.harvard.edu/diseases-and-conditions/proton-pump-inhibitors.

3

alcohol cessation, but that Plaintiff admitted she had resumed drinking four to five beers daily. *Id*. Dr. Rothenberg assessed that Plaintiff had an upper gastrointestinal bleed, anemia due to blood loss, and thrombocytopenia (low platelet count[3]). AR 591-96.

### 3. Verification of Physical/Mental Incapacity by Dr. Licht

On August 28, 2015, N. Licht, M.D., completed a Verification of Physical/Mental Incapacity concerning Plaintiff. AR 601. Licht stated that Plaintiff was unemployable as of May 16, 2015. *Id*. For an impairment, Licht stated that, "alcoholism has led to cirrhosis (liver failure) with resulting disability." *Id*. On August 11, 2017, Dr. Licht prepared a letter stating his opinion that, "[d]ue to liver failure with cirrhosis, ascites, and encephalopathy, I do not believe [Plaintiff] is employable." AR 900.

## III. SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On October 8, 2014, Plaintiff protectively filed a claim for Disability Insurance Benefits ("DIB"), and on December 1, 2017 protectively filed a Title XVI application for supplemental security income ("SSI"). AR 12, 195, 200. In both applications, Plaintiff alleged disability beginning on July 4, 2014. AR 12, 243. On June 10, 2015, the agency denied Plaintiff's claims, finding Plaintiff did not qualify for disability benefits. AR 12, 195. Plaintiff subsequently filed a request for reconsideration, which was denied on November 2, 2015. AR 12, 109, 110-15. On November 22, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 116-17. ALJ Serena S. Hong conducted a hearing on September 14, 2017. AR 12. Plaintiff testified in person at the hearing and was represented by D. McCaskell, a non-attorney representative. The ALJ also heard testimony from Vocational Expert V. Rei.

### A. Plaintiff's Testimony

Plaintiff testified at her administrative hearing that she had problems walking and with her legs. AR 55. She testified that the most she could walk at once was "maybe to my mailbox and back," "like 60 steps." AR 55-56. She testified that she could be up standing and walking for "about maybe 20 minutes" before having to lie down. AR 57. She testified that she would

---

[3] *See* https://www.mayoclinic.org/diseases-conditions/thrombocytopenia/symptoms-causes/syc-20378293.

experience leg swelling, cramps, and spasms. AR 59. And she described her pain level as 10 when experiencing leg spasms. *Id.*

## B. ALJ's Decision and Plaintiff's Appeal

On February 22, 2018, the ALJ issued a partially favorable decision finding: Plaintiff was not disabled for DIB through June 30, 2016, the date Plaintiff was last insured, AR 22; but Plaintiff was disabled as of February 13, 2017—but not before that date—for purposes of SSI, AR 22-23. This decision became final when the Appeals Council declined to review it. AR 1-4.[4] Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On August 30, 2019, Plaintiff filed the present Motion for Summary Judgment. On October 22, 2019, the Commissioner filed a Cross-Motion for Summary Judgment.

## IV. STANDARD OF REVIEW

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). An ALJ's decision to deny benefits must be set aside only when it is "based on legal error or not supported by substantial evidence in the record." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation and quotation marks omitted). It requires "more than a mere scintilla," but "less than a preponderance" of the evidence. *Id.*; *Trevizo*, 871 F.3d at 674.

The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d at 675 (citation and quotation marks omitted). However, "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* (citation and quotation marks omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical

---

[4] The Notice of Appeals Council Action does not provide a date of decision or date of notification.

5

testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation and quotation marks omitted).

## V. DISCUSSION

### A. Framework for Determining Whether a Claimant Is Disabled

A claimant is considered "disabled" under the Social Security Act if two requirements are met. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that the claimant is unable to perform previous work and cannot, based on age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[5] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ

---

[5] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

1    determined Plaintiff had not performed substantial gainful activity since the alleged onset date
2    ("AOD"), July 4, 2014. AR 15.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments since the AOD: kidney disease; alcoholism; hepatitis C; and depression. AR 15. The ALJ determined an established onset date ("EOD") of February 13, 2017, and found that since the EOD, Plaintiff had the following severe impairments: chronic liver disease; chronic kidney disease; alcoholism; hepatitis C; depression; and encephalopathy. AR 15.

If the ALJ determines that the claimant has a severe impairment, she proceeds to the third step and must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. *Id.* § 404.1520(d). Here, the ALJ determined that at the AOD, Plaintiff did not have an impairment or combination of impairments that met any listing. AR 15-17.

Before proceeding to step four, an ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. *Id.* § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all the claimant's medically determinable impairments, including the medically determinable impairments that are non-severe. *Id.* § 404.1545(e).

In the RFC assessment, the ALJ assesses the claimant's physical and mental abilities, as well as other abilities affected by the claimant's impairments. *Id.* §§ 404.1545(b)-(d), 416.945(b)-(d). With respect to a claimant's physical abilities, "[a] limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or

other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce [a claimant's] ability to do past work and other work." *Id.* §§ 404.1545(b), 416.945(b). With respect to a claimant's mental abilities, "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [the claimant's] ability to do past work and other work." *Id.* §§ 404.1545(c), 416.945(c).

Here, the ALJ determined that at the AOD, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff could not climb ladders, ropes, and scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; and had to avoid concentrated exposure to hazards such as unprotected heights and moving machinery. AR 17. The ALJ found that Plaintiff was limited to simple, routine tasks, and that she was limited to occasional public contact and superficial interaction with co-workers and supervisors. AR 17. The ALJ determined that at the EOD, Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), except that Plaintiff could not climb ladders, ropes, and scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; and had to avoid concentrated exposure to hazards such as unprotected heights and moving machinery. The ALJ found that Plaintiff was limited to simple, routine tasks, and that she was limited to occasional public contact and superficial interaction with co-workers and supervisors. AR 20.

Once the ALJ has determined a claimant's RFC, the fourth step of the evaluation process requires that the ALJ determine whether the RFC is sufficient to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Here, the ALJ determined that prior to the EOD, Plaintiff could perform past relevant work as a production worker, Dictionary of Occupation Titles 706.687-010, light, Specific Vocation Preparation 2. AR 21. The ALJ found that work did not require the performance of work-related activities precluded by Plaintiff's RFC. *Id.* The ALJ

8

found that beginning on the EOD, Plaintiff's RFC prevented Plaintiff from being able to perform past relevant work. *Id*. The ALJ found that Plaintiff did not have work skills that were transferrable to other occupations within her RFC. *Id*.

Based on her findings, the ALJ found that Plaintiff was not disabled under §§ 216(i) and 223(d) (DIB) through June 30, 2016, the date last insured, but that Plaintiff had been disabled under § 1614(a)(3)(A) (SSI) since the EOD. AR 22.

## B. Plaintiff's Arguments

Plaintiff argues that the ALJ failed to properly evaluate her mental impairment as required by 20 C.F.R. § 404.1520. Plaintiff also argues that the ALJ's decision was ambiguous, contradictory and therefore unreviewable. More specifically, Plaintiff argues that the ALJ does not explain how she found Plaintiff could perform light work prior to February 13, 2017 (the EOD) but be limited to sedentary work after, and she takes issue with the ALJ having given both great weight and little weight to Dr. Licht's opinions.

### 1. Plaintiff's Mental Impairment

Plaintiff maintains that the ALJ failed to properly evaluate Plaintiff's mental impairment. Plaintiff argues that the ALJ independently determined Plaintiff's mental health and that her determination that Plaintiff suffered from no disabling mental health limitations was not supported by substantial evidence. In support of this argument, Plaintiff points to Dr. Larson's findings that Plaintiff suffered from marked impairment in multiple areas of mental functioning, and points to evidence that Dr. Licht treated Plaintiff for depression and that Plaintiff was prescribed citalopram (an anti-depressant[6]) in 2011. *See* AR 365-67.

#### a. Legal Standard

At step three in the sequential process, an ALJ must consider whether a claimant's conditions meet or equal any of the impairments outlined in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). The listing describes impairments that "would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just

---

[6] *See* https://www.mayoclinic.org/drugs-supplements/citalopram-oral-route/description/drg-20062980.

9

'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original). If a claimant's "impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1520(d). The claimant bears the burden of establishing a prima facie case of disability under the listings. *See Thomas*, 278 F.3d at 955; 20 C.F.R. § 404.1520(a)(4)(iii).

An impairment meets a listing when *all* the medical criteria required of that listing are satisfied. 20 C.F.R. § 404.1525(c)(3); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) ("To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim."); *Sullivan*, 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment. . . ." *Tackett*, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526(a)).

When determining whether a claimant is disabled, the ALJ must consider each medical opinion in the record together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *Algazzali v. Colvin*, 2016 WL 394009, at *6 (N.D. Cal. Feb. 1, 2016). In deciding how much weight to give to any medical opinion, the ALJ considers the length of the treatment relationship and the frequency of examination. 20 C.F.R. § 416.927(c)(2). "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." *Id.* The ALJ considers also the extent to which the medical source presents relevant evidence to support a medical opinion. *Id.* § 416.927(c)(3). Generally, more weight will be given to an opinion that is supported by medical signs and laboratory findings, and the degree to which the opinion provides supporting explanations and is consistent with the whole record. *Id.* § 416.927(c)(3)-(4).

Lastly, in conjunction with the relevant regulations, the Ninth Circuit "developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527). Courts "distinguish

10

among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where an examining doctor's opinion is contradicted by another opinion, an ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id.* While a physician's opinion is afforded weight, it is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *McLeod v. Astrue*, 640 F.3d 881, 884–85 (9th Cir. 2011).

### b. Analysis

Plaintiff argues that she meets Adult Listing 12.04 for depression (A) and (B) and that the ALJ erred in finding that the record did not support disabling mental health limitations. The ALJ found that the severity of Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listing 12.04—depressive, bipolar or related disorders. AR 16.

Concerning Dr. Larson's evaluation, Plaintiff points only to Dr. Larson's conclusions that Plaintiff had impairment in broad areas of mental functioning. AR 409-410. She does not point to any evidence in the evaluation or the record more broadly to support those conclusions.

In her decision, the ALJ addressed Dr. Larson's evaluation and opinions, but found that the body of evidence supported a finding of no more than moderate or mild limitations in broad areas of mental functioning. She noted that although Dr. Larson observed that Plaintiff had a depressed mood and affect, and impaired concentration, Dr. Larson also noted Plaintiff's symptoms appeared treatable with intervention. AR 18 (citing AR 407-09). She noted that nonetheless Plaintiff was not under the care of a mental health provider and was not prescribed medication to manage her mood. AR 18. The ALJ noted also that treatment records overall did not note inappropriate behavior by Plaintiff. AR 18-19. The ALJ noted that, even when Plaintiff was under the

11

influence of alcohol, she was noted to be pleasant and cooperative. AR 19 (citing AR 929 ("[Plaintiff] had obvious alcohol on her breath but was alert and cooperative when I examined her.").

The ALJ noted Dr. Larson's opinion that Plaintiff's "ability to persist even at simple and repetitive tasks is moderately impaired," and Dr. Larson's observation that Plaintiff's ability to interact with others was markedly impaired. *Id*. However, she gave only partial weight to that opinion. *Id*. She noted that Plaintiff had not required impatient care and was not under the care of a mental health professional. AR 16, 19. She noted that Dr. Larson's opinion was based on a one-time examination of Plaintiff and based on largely on Plaintiff's presentation on that day and time, and she opined that Dr. Larson's opinion was not necessarily reflective of Plaintiff's mental health overall. AR 19-20. And indeed, Dr. Larson opined that it was "unclear somewhat about [Plaintiff's] ability to function overall. Again, additional information would assist with this." AR 409-10. The ALJ noted that although Dr. Larson found that Plaintiff's fund of knowledge was moderately to severely impaired, Plaintiff was able during the consultation to recall her medical and work history and answer questions appropriately. AR 16. Finally, the ALJ noted that Dr. Larson found that Plaintiff had difficulty with concentration and memory tasks during the consultation, and that Dr. Larson described Plaintiff's concentration as moderately to severely impaired and that Plaintiff became frustrated and overwhelmed with tasks, but she noted that Plaintiff was able to follow along during the administrative hearing and recall medical and work history. AR 16-17. The ALJ also concluded that none of Plaintiff's medical records reported treatment consistent with the degree of limitation provided in Dr. Larson's opinion, AR 19; Plaintiff has not pointed to any that do.

Finally, the ALJ accorded great weight to state agency psychological consultants' opinions, AR 20, one signed March 7, 2015 by S. Sen, M.D., and another signed November 1, 2015 by P. Hawkins, Ph.D., AR 79, 95. Those opinions found that Plaintiff had only moderate restriction of activities of daily living, and moderate difficulties in maintaining social functioning and concentration, persistence or pace. AR 79. The ALJ found those determinations to be consistent with the evidence in the record. AR 20. An ALJ may properly give more weight to a

12

non-examining medical professional when that evidence is consistent with the record. *Whitten v. Colvin*, 642 Fed. Appx. 710, 711-12 (9th Cir. 2016) (ALJ reasonably determined that opinions by examining psychologists as to severity of mental health limitations were contradicted by longitudinal treatment records, claimant's responses on his mental status examinations, his activities of daily living, and opinion of state agency non-examining psychologist, whose conclusion was consistent with other evidence in the record) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (noting that an "incongruity" between a doctor's opinion and medical records may suffice as a specific and legitimate reason for rejecting that doctor's opinion)); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a contrary opinion of a non-examining medical expert may constitute substantial evidence when it is consistent with other independent evidence in the record). The ALJ found that the record did not support disabling mental health impairments. AR 19.

The Court finds that it was not error for the ALJ to discount Dr. Larson's findings that Plaintiff suffered from marked impairment in broad areas of mental functioning. The ALJ found that Dr. Larson's findings were not supported by evidence in the evaluation itself, and the ALJ pointed to specific evidence in the evaluation that she opined contradicted Dr. Larson's findings. The ALJ pointed to other evidence in the record, opinions by state agency psychological consultants that Plaintiff suffered from only moderate limitations. The ALJ found those opinions were consistent with the broader record. Plaintiff, for her part, points to no specific evidence in the record supporting Dr. Larson's conclusions that she was markedly impaired in areas of mental functioning. An ALJ need not accept a medical opinion that is brief, conclusory, and inadequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Finally, the ALJ also noted the length of the relationship between Dr. Larson and Plaintiff, and the fact that Dr. Larson's opinion was based on one examination of Plaintiff on one day. A physician's opinion may be discounted where it is based on only a single visit with the claimant. *Acord v. Colvin*, 571 Fed. Appx. 522, 522 (9th Cir. 2014). Substantial evidence supports the ALJ's discounting Dr. Larson's opinion that Plaintiff suffered from severe or marked impairment.

Lastly, in support of her argument that the ALJ improperly evaluated her mental

13

impairment, Plaintiff asserts that Dr. Licht treats her depression and that she is prescribed citalopram, an anti-depressant. Firstly, the ALJ did not discount that Plaintiff had depression (she noted that Plaintiff "endorsed symptoms of depression," AR 18), but rather found that her depression did not meet the severity to qualify as disabled. Regarding the citalopram, Plaintiff points to progress notes from Petaluma Health Center from 2011. *See* AR 365-67. The notes reflect that Plaintiff was prescribed citalopram hydrobromide in August 2011 for some duration of time. AR 367. However, more recent notes and other evidence does not show Plaintiff prescribed that medication. *E.g.*, AR 363 (note from March 13, 2012), AR 361 (note from March 21, 2012), AR 359 (note from May 25, 2012), AR 347 (note from July 18, 2014), AR 936 (Emergency Department Report from May 31, 2016). And notes from 2012 reflect that Plaintiff did not report feeling depressed or hopeless, or a loss of "interest or pleasure in doing things." *E.g.*, AR 361, 363. Similarly, although the progress note Plaintiff references shows that she was assessed with depression by Dr. Licht in September 2011, more recent notes by Petaluma Health Center, including notes completed by Dr. Licht, indicate only intermittent assessments of depression. *E.g.*, AR 363 (March 13, 2012 note by Dr. Licht, no depression); AR 359 (May 25, 2012 note by Dr. Licht, no depression); AR 356 (July 6, 2012 note by Dr. Licht, no depression); AR 353 (October 18, 2012 note by Dr. Maria G. Ochoa, no depression); AR 351 (April 18, 2014 note by Dr. Joseph Eichenseher, no depression); AR 347 (July 18, 2014 note by Dr. Licht, depression). Also, Petaluma Valley Hospital medical records from July 2017, the most recent in the record, do not show Plaintiff actively prescribed any anti-depressant medications, which prescriptions would be consistent with treatment for depression. *E.g.*, AR 789 (July 19, 2017 ED Summary Report); AR 798 (July 19, 2017 EDM Patient Record); AR 817 (July 7, 2017 Emergency Department Report). And lastly, while Plaintiff asserts that Dr. Licht treats her for depression, his August 11, 2017 letter opining that she is disabled asserts that she suffers from liver failure, ascites, and encephalopathy, but does not indicate depression. AR 900. Thus, while Plaintiff may have been prescribed medication for treating depression at some point in the past, she has pointed to no concrete evidence that she continues to be under the care of a mental health provider, including Dr. Licht. Instead, the evidence, or lack of, is consistent with the ALJ's finding that Plaintiff did

14

not suffer from disabling mental health limitations.

The Court finds substantial evidence supporting the ALJ's findings regarding Plaintiff's mental impairment.

**2.      The Consistency of the Findings**

**a.      The Consistency of the ALJ's RFC Findings**

Plaintiff argues that the ALJ does not explain her findings that Plaintiff could perform light work prior to 2017 but be limited to sedentary work after February 13, 2017. The ALJ's decision reveals otherwise.

In explaining her finding that Plaintiff had the RFC to perform light work before the EOD, the ALJ noted Plaintiff's testimony that she had difficulty walking due to problems with her legs, and that she experienced pain and swelling and had to elevate her legs during the day. AR 17-18. However, the ALJ found that the evidence did not support Plaintiff's statements about the intensity, persistence, or limiting effects of symptoms. AR 18. The ALJ noted that Plaintiff had had a series of emergency room visits and hospitalizations due to flank pain and hematemesis, but also that the record reflected that Plaintiff's gastrointestinal problems were attributed to ongoing use of alcohol. AR 18. She noted that Plaintiff continued to drink alcohol. AR 18 (citing AR 347, 467, 472). The ALJ noted that physical examinations showed no swelling in Plaintiff's extremities. *Id*. (citing AR 368). She noted that a medical consultative examination in May 2015 reflected findings within normal limits, and that an examination of Plaintiff's abdomen produced normal results. *Id*. (citing AR 416). She noted that there was no evidence of swelling or effusion in Plaintiff's extremities, and that Plaintiff had full motor strength in upper and lower extremities. *Id*. 18 (citing AR 416-18); *see also* AR 926 (Emergency Department Report from November 18, 2016 noting: "Extremities: full range of motion, normal appearance, no tenderness"). She noted treatment records from July 2015 which stated that if Plaintiff maintained sobriety, she would qualify for hepatitis C treatment, *see* AR 608, but that Plaintiff testified that she had not received any treatment. AR 18; *see* AR 63.

In explaining her conclusion that Plaintiff had the RFC to perform only sedentary work as of the EOD, the ALJ noted that in February 2017, Plaintiff "had a worsening of condition with

altered mental status and was diagnosed with encephalopathy." AR 20 (citing AR 625, 900). The ALJ noted that Dr. Licht provided an August 11, 2017 opinion that Plaintiff was unemployable due to complications from liver failure with cirrhosis, ascites, and encephalopathy. AR 21 (citing AR 900). The ALJ gave great weight to this opinion, noting that encephalopathy had not been documented in the period prior to February 13, 2017, and finding that the opinion was thus consistent with a worsening of Plaintiff's conditions around that time. *Id*. The ALJ also referenced an Emergency Department Report from Petaluma Valley Hospital on May 5, 2017, which noted that Plaintiff had end stage liver disease. AR 20; *see* AR 849-50. That report reflects also that Plaintiff was hospitalized from February 15 to 17, 2017 for "weakness and functional decline related to chronic liver failure." AR 849. It also reflects, and the ALJ noted, that Plaintiff was discharged to rehabilitation services for continued rehabilitation. AR 849, 20. The ALJ further noted that in February 2017, Plaintiff also had ascites which required paracentesis, and portal venous hypertension. AR 20 (citing AR 652, 1059).

Plaintiff counters that she had kidney disease in 2015 as well as at the EOD. She points to a laboratory report from September 13, 2015. However, that laboratory report is consistent with the ALJ's finding. *See* AR 435. It suggested only "normal to mildly reduced kidney function." Also—like with Plaintiff's depression—the ALJ did not find that Plaintiff did not have kidney disease before February 13, 2017; she found Plaintiff had chronic liver and kidney disease since at least July 4, 2014. Yet she found the impairments did not meet or medically equal a severity to warrant a finding of disability. More precisely, she found that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed physical impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments, particularly listings 5.02-gastrointenstial hemorrhaging from any cause, requiring blood transfusion, 5.05-chronic liver disease, 6.05-chronic kidney disease, with impairment of kidney function." AR 15-16. As evidence she noted that, concerning 5.02, Plaintiff had not required three blood transfusions. She noted that, concerning 5.05, Plaintiff's bleeding had been attributed to alcohol gastritis, that Plaintiff had no documented history of ascites, that Plaintiff had not had listing-level creatinine, that Plaintiff had

16

not had chronic liver disease scores of 22 or greater, and that Plaintiff's kidney disease had not resulted in reduced glomerular filtration on at least two occasions 90 days apart during a consecutive 12-month period.

Finally, Plaintiff points to a January 1, 2016 observation report completed by Dr. Victor Sanders as evidence that she had ascites at that time. However, that report does not note ascites. AR 597-99. It does however note, "abdomen: soft, nondistended, nontender, with normoactive bowel sounds. Negative for peritoneal signs," and, "pulmonary: clear to [sic] auscultation bilaterally. Negative for rales, rhonchi, or wheezing." AR 598.

The Court finds that the ALJ sufficiently explained her reasons for finding Plaintiff could perform light work prior to the EOD but only sedentary work after, and that the ALJ's findings are supported by substantial evidence.

### b. The ALJ's Treatment of Dr. Licht's Medical Opinions

Plaintiff also takes issue with the fact that the ALJ gave great weight to Dr. Licht's opinion in 2017, but only little weight to Dr. Light's opinion in 2015. Dr. Light opined that Plaintiff was unemployable as of May 16, 2015, due to cirrhosis brought on by alcoholism. The ALJ gave this opinion little weight. Plaintiff argues that the ALJ did not provide clear and convincing reasoning for why she then gave great weight to Dr. Licht's 2017 opinion that Plaintiff is unemployable.

As a preliminary point, the ALJ was not required to provide clear and convincing reasoning for why she declined to accept Dr. Licht's opinions as to Plaintiff's disability status. A "finding of disability [is] an issue properly reserved to the ALJ." *Sarkiss v. Colvin*, 623 Fed. Appx. 329, 330 (9th Cir. 2015) (citing 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability.")); 20 C.F.R. § 404.1527(d) ("Opinions on some issues, such as [an opinion as to disability], are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."); SSR 96-5p, 1996 WL 374183 (July 2, 1996) (medical source opinion about whether an individual is unable to work, even when offered by treating source, is not entitled to controlling weight or given special significance); *Henry v.*

*Colvin*, 2016 WL 164956, at *15 (E.D. Cal. Jan 14, 2016) (ALJ properly gave "minimal weight" to treating physician's opinion that claimant was unemployable; determination of whether a claimant is disabled is reserved for Commissioner); *see Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (affirming ALJ's decision to reject treating physician's assessment when it was conclusory and included no assessment of the claimant's functional capacity). A statement by a medical source, such as a treating physician, that a claimant is "disabled" or "unable to work" does not mean that the ALJ must or will determine the claimant is disabled. The ALJ was not required to accept Dr. Licht's opinion in 2015 that Plaintiff was unemployable; the ALJ was tasked with making that decision on behalf of the Commissioner.

Plaintiff does not suggest that the ALJ discounted Dr. Licht's medical opinion, i.e., Dr. Licht's opinion about Plaintiff's impairments. Generally, an ALJ gives more weight to medical opinions of a claimant's treating physician; and if an ALJ finds that a treating source's medical opinion is well-supported and not inconsistent with other substantial evidence, the ALJ will give it controlling weight. 20 C.F.R. § 404.1527(c)(2). Here the ALJ's findings are consistent with the Dr. Licht's opinions to the extent they were medical opinions (as opposed to opinions on disability status). Dr. Licht opined on August 28, 2015 that Plaintiff suffered from cirrhosis due to alcoholism, AR 601, and the ALJ found that Plaintiff suffered from chronic liver disease. The ALJ found, however, that before the EOD Plaintiff's physical impairments, including her liver disease, did not meet any listing of Appendix 1. AR 16. She determined that Plaintiff was not disabled based on her chronic liver disease. Similarly, the ALJ gave full weight to Dr. Licht's August 11, 2017 medical opinion that Plaintiff had liver failure with cirrhosis, ascites, and encephalopathy. AR 21; *see* AR 900. The ALJ committed no reversable error vis-à-vis Dr. Licht's opinions.

Moreover, substantial evidence supports the ALJ's finding of February 13, 2017 as an EOD. The evidence reflects that as of that date, Plaintiff had end stage renal disease and ascites, and received an IR paracentesis. AR 625-31. She had been hospitalized for functional decline related to chronic liver failure, and was subsequently discharged to a care facility for continued rehabilitation, AR 849, had ascites, AR 628, and had encephalopathy, AR 900. This amounts to

18

substantial evidence supporting the ALJ's finding of a worsening of Plaintiff conditions, along with altered mental status, sufficient to support a changed status.

## VI. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: January 7, 2020

THOMAS S. HIXSON
United States Magistrate Judge